## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| In re: $7,600.00 | ) | Case No: 18 C 50211 |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) | Judge Frederick J. Kapala |

## ORDER

Petitioner's motion for return of seized property [1], motion to reconsider [3], motion to compel [4], motion for relief [5], and motion to grant relief [13] are denied. This case is closed.

## STATEMENT

As part of his criminal case, United States v. Flournoy, 12-cr-50044-3, Michael Flournoy filed a motion under Federal Rule of Criminal Procedure 41(g) seeking the return of, among other things, $7,600 in U.S. currency that was seized from a black Gucci bag found in Flournoy's car at the time of his arrest on drug trafficking charges. Based on the government's representation that the $7,600 had been administratively forfeited, along with a declaration of administrative forfeiture that the government submitted, the court denied Flournoy's Rule 41(g) motion. Flournoy subsequently filed a motion to reconsider in which he argued pursuant to 18 U.S.C. § 983(e) that the government had failed to provide sufficient notice of the forfeiture. The court denied the motion to reconsider.

On appeal, the Seventh Circuit vacated and remanded after identifying two problems with this court's orders. First, the Court concluded that the declaration of administrative forfeiture submitted by the government did not provide sufficient evidence to conclude that the $7,600 was included in the $197,800 that had been forfeited. Second, the Court determined that Flournoy had properly challenged the forfeiture for lack of notice in his motion to reconsider and that this court should have allowed that challenge to proceed. Because postjudgment motions under either Rule 41(g) or § 983(e) are civil actions, the court directed the clerk to file these motions in a new civil case, which the court determined should be limited to addressing the two issues identified by the Seventh Circuit. After conducting an evidentiary hearing on these issues, the court finds that the $7,600 was administratively forfeited and the notice provided to Flournoy was sufficient. Accordingly, petitioner's motions under both Rule 41(g) and § 983(e) are denied.

### Rule 41(g) Motion

Rule 41(g) provides that "[a] person aggrieved by . . . the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). In order to grant the requested relief, however,

the government must be in possession of the property at issue. See United States v. Stevens, 500 F.3d 625, 628 (7th Cir. 2007) ("Rule 41(g) permits only the recovery of property in the possession of the Government. Therefore, if the Government no longer possesses the property at issue, no relief is available under Rule 41(g)."); Okoro v. Callaghan, 324 F.3d 488, 491 (7th Cir. 2003) ("Since in the usual case the only relief sought by the Rule 41(g) motion is return of the property by the government, the fact that the government doesn't have it is ordinarily a conclusive ground for denial of the motion." (emphasis omitted)). Accordingly, if the $7,600 was administratively forfeited, as the government contends, then Flournoy's motion under Rule 41(g) must be denied. See United States v. Flournoy, 714 F. App'x 592, 594 (7th Cir. 2018) (explaining that Rule 41(g) "applies to property that the government has seized, but not to property forfeited to it").

At the evidentiary hearing, the government presented the testimony of several witnesses and numerous exhibits which showed the chain of custody of the $7,600 from its initial seizure on July 30, 2012, through its eventual forfeiture (along with other currency) on October 22, 2013. The $7,600 was seized by Winnebago County Sheriff's Deputy Brad Kaiser on July 30, 2012, while he was working as a federal task force officer under the direction of the Federal Bureau of Investigation ("FBI"). Deputy Kaiser found the $7,600 inside a zippered compartment of a black Gucci bag that was recovered from the 2012 Honda which was owned and driven by Flournoy on the day of his arrest. See Gov't Ex. 1 at 2, 4, 27. Deputy Kaiser also seized 18 bundles of U.S. currency totaling $180,200 that were wrapped in green plastic and had been transported by Flournoy in the black Gucci bag from the trunk of the Honda to the undercover officer's truck during the attempted drug transaction. A total of $187,800 in U.S. currency ($180,200 from the 18 bundles + $7,600 from the zippered compartment) was sealed in an evidence bag and lodged into evidence. See id. at 4; Gov't Ex. 2. Deputy Kaiser also recovered another bundle containing $10,000 in U.S. currency from the spare tire area of the Honda that was sealed in a separate evidence bag and lodged into evidence. See Gov't Ex. 1 at 5; Gov't Ex. 2.

On November 30, 2012, Deputy Kaiser removed from evidence all of the U.S. currency that had been seized in connection with Flournoy's criminal case, including the $187,800 and the $10,000 discussed above.[1] See Gov't Exs. 2 and 3. Deputy Kaiser took the money to the bank to be counted and received a cashier's check for $203,576 payable to the U.S. Marshals Service, which he later transferred to FBI Special Agent Neal Gruhn. See Gov't Exs. 2 and 3. On December 5, 2012, at Special Agent Gruhn's request, Deputy Kaiser took the cashier's check back to the bank and converted it into three separate checks payable to the U.S. Marshals Service in the amounts of $197,800, $4,010, and $1,000.[2] See Gov't Ex. 4 at 2; see also Gov't Exs. 5C, 6C, and 7C. Those checks were received by the FBI and transferred to the U.S. Marshals Service for deposit into its Seized Asset Deposit Fund Account in the Federal Reserve Bank. See Gov't Exs. 5A, 5B, 6A, 6B, 7A, and 7B; see also Gov't Ex. 8. According to the testimony at the hearing, the check for $197,800 was the total of the currency from the two evidence bags discussed above that contained $187,800

---

[1]There were five additional evidence bags containing various amounts of U.S. currency that were seized during the investigation, but these are unrelated to the $7,600 at issue in this case and, therefore, are not discussed in detail.

[2]The government did not seek to forfeit the remaining currency, which was returned to Deputy Kaiser in cash.

and $10,000, respectively. Therefore, the check for $197,800 included, among other things, the $7,600 from the zippered compartment of the black Gucci bag.

The FBI provided notice to Flournoy, as discussed below, of the pending forfeiture proceedings for the $197,800, which is identified throughout the various records with its Asset ID Number of 12-FBI-006178. See Gov't Exs. 7A, 11A. After receiving no claim from Flournoy or any other interested party, the $197,800 was administratively forfeited on October 22, 2013. See Gov't Ex. 13.

Based on the foregoing, it is clear that, at the time Flournoy filed his motion for return of property under Rule 41(g), the government was no longer in possession of the $7,600, as it had already been administratively forfeited. Accordingly, after consideration of all the evidence presented at the hearing, as well as the parties' arguments, the court denies Flournoy's Rule 41(g) motion.[3]

### Section 983(e) Motion

With certain exceptions that are not applicable here, the government is required to send written notice of an administrative forfeiture proceeding to all interested parties "in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure." 18 U.S.C. § 983(a)(1)(A)(i). If an interested party does not receive such notice, then he "may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property." Id. § 983(e). A motion under § 983(e) "shall be granted if–(A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim." Id. Although the government is required to take reasonable steps to provide notice, neither the statute nor the Due Process Clause requires actual notice under these circumstances. See Dusenbery v. United States, 534 U.S. 161, 170-71 (2002).

On August 30, 2012, the FBI sent notice of the forfeiture to Flournoy via certified mail, return receipt requested, at three separate locations: (1) an address in Chicago, which was believed to be his home address; (2) the address of his attorney of record in the criminal proceeding; and (3) the address of the Ogle County Jail where Flournoy was being held in custody. See Gov't Exs. 9A, 10A, and 11A. The letter sent to Flournoy's address in Chicago was unclaimed and returned to sender, but the FBI received a return receipt for the other two letters, thereby indicating that those letters were successfully delivered. See Gov't Exs. 9B, 10B, and 11B. Except for the different addresses, the three notices were identical and provided Flournoy with a description of the property seized; stated the date, cause, and location of the seizure; and gave instructions on how to contest the forfeiture and file a claim of ownership. See, e.g., Gov't Ex. 11A ("On July 30, 2012, property

---

[3]Although it is somewhat difficult to follow, Flournoy's only argument in his amended post-hearing brief on the issue of "the $7,600 being included with the $197,800" appears at the bottom of page 3 and top of page 4. Flournoy seems to argue that because Deputy Kaiser's reports regarding the seized funds were made after the state had already dismissed its charges against Flournoy, those reports were somehow fabricated or based on false evidence. That argument is nonsensical and lacks merit and, in any event, does not directly address or contradict the chain of custody evidence discussed above.

was seized by the Federal Bureau of Investigation (FBI) at Rockford, Illinois for forfeiture for violation of THE CONTROLLED SUBSTANCES ACT. The property was appraised at $197,800.00 and is described as follows: $197,800.00 U.S. Currency seized from a 2012 Honda CR2, VIN: JHMZF1D67CS002023, in possession of Michael Flournoy."). In addition, the FBI also published notice of the forfeiture in the Wall Street Journal once a week for three successive weeks. See Gov't Ex. 12.

Based on these facts, the court concludes that the government did take reasonable steps to provide Flournoy with notice of the forfeiture.[4] While it is true that the notice sent to Flournoy's home address was returned without being delivered, that was not the only method of sending notice that was employed by the FBI. In Dusenbery, the Supreme Court held that sending notice via certified mail "addressed to petitioner at the penitentiary was clearly acceptable." 534 U.S. at 172. Therefore, in this case, the notice sent via certified mail to Flournoy at the Ogle County Jail was sufficient to provide notice of the forfeiture proceeding. The government also sent notice to Flournoy's attorney, which also satisfies due process. See Bye v. United States, 105 F.3d 856, 857 (2d Cir. 1997) ("We conclude that the notice sent to Bye's attorney was reasonably calculated, in the circumstances, to apprise Bye of the pendency of the administrative forfeiture proceeding and to afford him an opportunity to present his objections. Accordingly, he received due process."). Given these two notices that were sent to the jail and to Flournoy's attorney, both of which were delivered according to the U.S. Postal Service, the government met its obligation to "take reasonable steps to provide [Flournoy] with notice." 18 U.S.C. § 983(e)(A)(1).

In his amended post-hearing brief, Flournoy raises a few arguments on this issue, none of which has any merit. First, Flournoy contends that the notice to his home address was sent to the wrong address, and that if it had been sent to the address listed in the pretrial services report in his criminal case, then his wife could have filed a claim. The court recognizes that the pretrial services officer listed a different address in Chicago as Flournoy's residence and agrees that the notice which was sent to the address in Chicago and returned as undeliverable was insufficient to provide notice. However, that does not change the fact that the other notices sent to Flournoy at the jail and to his attorney of record provided sufficient notice of the forfeiture proceeding. Therefore, any deficiency in regard to correctly identifying Flournoy's home address does not alter the court's conclusion that notice was proper.[5]

---

[4] Although not argued by the government, in order to succeed on his § 983(e) motion, Flournoy would also have to show that he "did not know or have reason to know of the seizure within sufficient time to file a timely claim." 18 U.S.C. § 983(e)(1)(B). Here, the $7,600 at issue was seized from Flournoy's bag on the day of his arrest, so Flournoy would have known of the seizure immediately. In any event, because the notice was proper, the court need not address this additional basis to deny the § 983(e) motion.

[5] In response to Flournoy's motion to compel, there were several documents turned over to Flournoy and provided to the court before the evidentiary hearing that were not introduced into evidence at the hearing. A number of those documents list Flournoy's address as 10015 S. Charles, Chicago, IL, including the criminal complaint filed in Winnebago County (Bates # 75412-186), the notice of abandonment that Flournoy refused to sign (Bates # 75412-191), and the impounded vehicle report (Bates # 75412-182), which is the same address used for the notice of forfeiture. Presumably, this address was either provided by Flournoy himself, or it was the address listed on either his driver's license or the registration for the Honda. In any event, this address was in the investigation file, and it was not

4

Flournoy also argues that the government did not call any witnesses or otherwise introduce any evidence to establish that the mailed notices were actually received. While this is true, the government was not required to establish actual receipt of the notice; it only needed to establish that it took reasonable steps to provide Flournoy with notice of the forfeiture proceeding. See Dusenbery, 534 U.S. at 166 (concluding that "the Government's notice of the cash forfeiture comported with due process even in the absence of proof that the mail actually reached petitioner"); Lobzun v. United States, 422 F.3d 503, 508 (7th Cir. 2005) ("The Supreme Court has not required that the government achieve actual notice."). Moreover, the court finds that the return receipts for the successful notices, which were introduced into evidence, see Gov't Exs. 10B and 11B, provide sufficient evidence that the notices were in fact received at the listed addresses even without hearing testimony from the individuals who signed for the letters. Accordingly, any argument based on the claim that Flournoy did not receive actual notice of the forfeiture is invalid.

Flournoy also argued at the hearing and briefly contends in his brief that the notice was somehow improper because the seizure of the $7,600 did not occur until November 30, 2012, not July 30, 2012, as it states on the notices. This argument is based on a misunderstanding of the facts. The property was seized by Deputy Kaiser, while he was acting under the authority and direction of the FBI, on July 30, 2012, on the date of Flournoy's arrest. The fact that the seized currency was not converted into a cashier's check and transferred to Special Agent Gruhn until November 30, 2012, does not change the date of the seizure. Moreover, any claim that the forfeiture was somehow improper or premature goes to the merits of the forfeiture, which is not at issue before the court in this proceeding. Accordingly, Flournoy's arguments concerning the date of the seizure are misplaced.

Finally, although it is not clearly raised in his amended post-hearing brief, Flournoy argued at the hearing that the notice was somehow invalid because it did not specify that Flournoy had to post a bond in order to make a claim for the $7,600. This argument has no merit for a couple of reasons. First, as the government has thoroughly explained in its post-hearing brief, Congress had abolished the bond requirement for forfeiture proceedings before any notices were sent to Flournoy in this case. See 18 U.S.C. § 983(a)(2)(E) (2012) ("Any person may make a claim under subparagraph (A) without posting bond with respect to the property which is the subject of the claim."). Therefore, even though the Department of Justice's regulations that were in effect at the time were outdated and still provided for notice of the bond requirement, see 28 C.F.R. § 8.8 (effective until October 12, 2012), the notices that were actually provided to Flournoy were legally sufficient. Second, the court fails to see how Flournoy would have been prejudiced by this alleged oversight. A notice of forfeiture that did not mention any bond requirement actually would have been easier for Flournoy to comply with than one that required him to post a cash bond. Therefore, the fact that the notices sent to Flournoy did not mention a bond requirement is of no consequence and does not alter the court's analysis.

For all these reasons, the court concludes that the government took reasonable steps to notify Flournoy of the forfeiture proceeding and that the notice given comported with due process.

─────────────

unreasonable for the FBI to send notice to Flournoy at this address.

Accordingly, Flournoy's motion to set aside forfeiture under § 983(e), which was raised in his motion to reconsider, is denied.

### Remaining Motions

As a final matter, there are a few outstanding motions in this case that can be resolved quickly. Shortly after this case was remanded, and before the court even held its first status hearing, Flournoy filed a motion to compel the production of numerous documents. Although this motion was addressed in open court at multiple status hearings, it still remains pending on the docket. For the reasons more fully stated in open court, the court denies the motion to compel as moot. Many of the documents requested by Flournoy do not exist, and therefore, the government cannot be compelled to produce them, and the government already complied with the remainder of the requests by turning over all relevant documents in its possession.

Flournoy also made a number of requests, in his two motions for "relief" and in his amended post-hearing brief, that the court sanction the government for what he perceived to be misconduct. There is no basis for such a request. The government has not committed any type of misconduct in these proceedings and the court is not aware of any sanctionable conduct or wrongdoing. Accordingly, those motions seeking sanctions are denied.

Date: 8/16/2018                    ENTER:

                                   FREDERICK J. KAPALA

                                   District Judge